IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND; and ARTHUR H. BUNTE, JR., as Trustee,<br><br>    *Plaintiffs,*<br><br>v.<br><br>RAMP MANAGEMENT, LLC, a Texas limited liability company,<br><br>    *Defendant*. | Case No. 16-cv-9610<br><br>Judge<br><br>Magistrate Judge |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), Central States, Southeast and Southwest Areas Health and Welfare Fund (the "Health and Welfare Fund" and together with the Pension Fund collectively referred to as the "Funds") and Arthur H. Bunte, Jr., one of the Funds' present trustees, allege as follows:

### JURISDICTION AND VENUE

1. This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and is a suit to recover employer contributions owed to the Funds by Defendant in accordance with applicable collective bargaining and trust fund agreements as well as for collection by the Pension Fund of withdrawal liability, interest and penalties incurred by an employer as a result of a withdrawal from a multiemployer pension plan.

2. This Court has jurisdiction over this action under sections 502(e), 502(f), and 4301(c) of ERISA, 29 U.S.C. §§ 1132(e), 1132(f) and 1451(c).

3. Venue lies in this Court under section 502(e)(2) and 4301(d) of ERISA, 29 U.S.C. §§ 1132(e)(2) and 1451(d), in that the Funds are "employee benefit plans" as that term is defined in ERISA and are administered at their principal place of business in Rosemont, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Funds' Trust Agreements which designate this district as the appropriate forum for lawsuits to collect delinquent contributions and withdrawal liability.

## PARTIES

4. The Pension Fund is a multiemployer pension plan within the meaning of sections 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), with its principal office located at 9377 West Higgins Road in Rosemont, Illinois.

5. The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6. The Health and Welfare Fund is an employee benefit plan and trust, with its principal office located at 9377 West Higgins Road in Rosemont, Illinois.

7. The Health and Welfare Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the IBT on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing health and welfare benefits to participants and beneficiaries of

the Health and Welfare Fund and paying the administrative expenses of the Health and Welfare Fund.

8. Plaintiff Arthur H. Bunte, Jr. is a present trustee and fiduciary of the Funds within the meaning of section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and he and his fellow trustees are the plan sponsor of the Funds within the meaning of section 4001(a)(10) of ERISA, 29 U.S.C. § 1301(a)(10). Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Arthur H. Bunte, Jr. is authorized to bring this action on behalf of the Funds and their participants and beneficiaries in his capacity as a trustee and fiduciary.

9. Defendant Ramp Management, LLC ("Ramp Management") is a limited liability company organized under the laws of the State of Texas. Ramp Management is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

## BACKGROUND INFORMATION

10. Local Union Nos. 325 and 604 ("Locals 325 and 604") of the IBT are labor organizations which represent, for the purpose of collective bargaining, certain employees of Ramp Management and employees of other employers in industries affecting interstate commerce.

11. During all relevant times, Ramp Management and Locals 325 and 604 were parties to a collective bargaining agreement, the National Master Automobile Transporters Agreement ("NMATA"), pursuant to which Ramp Management was required to make contributions to the Funds on behalf of certain of its covered employees.

12. Ramp Management and Locals 325 and 604 were also parties to Participation Agreements which required Ramp Management to pay contributions to the Funds.

13. Ramp Management agreed to be bound by the terms of the Pension Fund Trust

Agreement and the Health and Welfare Fund Trust Agreement (collectively the "Trust Agreements") and all rules and regulations promulgated by the Trustees under said Trust Agreements.

14. Under the Trust Agreements, Ramp Management was required to "remit continuing and prompt contributions to the [Funds] as required by the applicable collective bargaining agreement . . ."

15. The Pension Fund's Trust Agreement provides that:

> Non-payment by an Employer of any moneys due shall not relieve any other Employer from its obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law. The interest payable by an Employer with respect to past due contributions and/or other money (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater). . . . Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

16. The Health and Welfare Fund Trust Agreement also contains a provision that is identical to the provision quoted in the above paragraph except there are no references to "withdrawal liability" in the Health and Welfare Fund Trust Agreement provision.

17. The Funds rely upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Funds bill the employers for contributions.

## **STATUTORY AUTHORITY**

18. Section 515 of ERISA , 29 U.S.C. § 1145, provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

19. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan --
>
> (A)  the unpaid contributions,
>
> (B)  interest on the unpaid contributions,
>
> (C)  an amount equal to the greater of--
>
>  (i)  interest on the unpaid contributions, or
>
>  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D)  reasonable attorney's fees and costs of the action, to be paid by the defendant, and

      (E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

20.    Section 4219(c)(5)(B) of ERISA, 29 U.S.C.A. § 1399(c)(5)(B) provides:

In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means--

. . . .

      (B)    any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

21.    Section 4301(b) of ERISA, 29 U.S.C.A. § 1451(b), provides:

In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

## STATUTORY AND CONTRACTUAL VIOLATIONS

### COUNT I: AUDIT FINDINGS

22.    Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

23.    Count I is brought by the Pension Fund and Arthur H. Bunte, Jr., as Trustee.

24.    Pursuant to the Pension Fund's Trust Agreement, the Pension Fund is permitted to audit work history records of participating employers in order to verify the accuracy and completeness of the reported employee work history submitted as part of the self-reporting system.

25. The Funds audited Ramp Management's records to verify the accuracy and completeness of employee work history reported to the Pension Fund by Ramp Management.

26. The audit revealed that Ramp Management failed to remit pension contributions on behalf of its covered employees.

27. Ramp Management breached the provisions of ERISA, the NMATA, the Participation Agreement and the Pension Fund's Trust Agreement by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund for the period of 2008 through 2010.

28. Ramp Management owes the Pension Fund approximately $80,832.00 for unpaid contributions (not including interest) for the period of 2008 through 2010, as a result of the conduct set forth in paragraph 27.

29. Under the Pension Fund's Trust Agreement, employers who fail to pay amounts revealed to be owed by an audit are required to pay all costs incurred in connection with the audit.

**WHEREFORE**, Plaintiffs request the following relief:

(a) A judgment against Defendant and in favor of the Pension Fund, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), and under the Pension Fund's Trust Agreement, for:

(i) the unpaid contributions owed to the Pension Fund by Defendant;

(ii) interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

    (iii) an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions;

    (iv) attorney's fees and costs; and

    (v) audit fees and costs.

  (b) Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

  (c) For such further or different relief as this Court may deem proper and just.

**COUNT II: FEBRUARY 2014 THROUGH FEBRUARY 2015 CONTRIBUTIONS**

  30. Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

  31. Count II is brought by all Plaintiffs.

  32. During all relevant times, Mr. Ronald King was employed by Ramp Management and covered by the NMATA.

  33. On or about February 28, 2014, while working for Ramp Management, Mr. King sustained injuries while performing work duties.

  34. As a result of such on-the-job injury, Mr. King was absent from work through at least February 28, 2015.

  35. Pursuant to Articles 53 and 54 of the NMATA, "[i]f an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work; however, such contributions shall not be paid for a period of more than twelve months."

  36. Ramp Management owes retroactive contributions on behalf of Mr. King for the

period of February 23, 2014 through February 28, 2015 for such on-the-job injury coverage and related interest.

37. Additionally, during the period of August 31, 2014 through January 31, 2015, Ramp Management reported the work history of its covered employees to the Funds. While Ramp Management paid the contributions related to the reported work history of its covered employees for the period of August 31, 2014 through January 31, 2015, Ramp Management paid such contributions to the Fund after the contributions were past due.

38. Based upon the employee work history reported to the Funds by Ramp Management during the period of August 31, 2014 through January 31, 2015, and Mr. King's on-the-job injury and absence from work, Ramp Management has breached the provisions of ERISA, the NMATA, the Participation Agreements and the Trust Agreements by failing to pay all of the contributions (and interest due thereon) owed to the Funds.

39. Despite demands that Ramp Management perform its statutory and contractual obligations with respect to making contributions to the Funds, Ramp Management has neglected and refused to pay the amounts that are due as a consequence of the conduct set forth in paragraph 37.

40. Ramp Management owes the Pension Fund $16,286.40 for unpaid contributions (not including interest) for the period of February 23, 2014 through February 28, 2015, and $525.68 in delinquent interest resulting from late payments received for the period of August 31, 2014 through January 31, 2015, as a result of the conduct set forth in paragraph 38.

41. Ramp Management owes the Health and Welfare Fund $14,662.20 for unpaid contributions (not including interest) for the period of February 23, 2014 through February 28, 2015, and $533.94 in delinquent interest resulting from late payments received for the period of August 31, 2014 through January 31, 2015, as a result of the conduct set forth in paragraph 38.

**WHEREFORE**, Plaintiffs request the following relief:

(a)  A judgment against Defendant in favor of the Funds, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

    (i)  the unpaid contributions owed to the Funds based upon the employee work history reported by Defendant;

    (ii)  interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (b) an annualized interest rate of 7.5%;

    (iii)  an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

    (iv)  attorney's fees and costs.

(b)  Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, *or* (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)  Such further or different relief as this Court may deem proper and just.

### COUNT III: WITHDRAWAL LIABILITY

42.  Plaintiffs hereby reallege and incorporate each and every allegation made in paragraphs 1 through 21 of this Complaint as though fully set forth herein.

43.  Count III is brought by the Pension Fund and Arthur H. Bunte, Jr., as Trustee.

44. The Pension Fund determined that on or about May 2, 2015, Ramp Management permanently ceased to have an obligation to contribute to the Pension Fund and/or permanently ceased all covered operations, thereby effecting a "complete withdrawal" from the Pension Fund within the meaning of section 4203 of ERISA, 29 U.S.C. § 1383.

45. As a result of this complete withdrawal, Ramp Management incurred withdrawal liability to the Pension Fund in the principal amount of $8,617,423.67 (the "Complete Withdrawal Liability"), as determined under section 4201(b) of ERISA, 29 U.S.C. § 1381(b).

46. On or about November 18, 2015, Ramp Management received a notice and demand for payment of the withdrawal liability issued by the Pension Fund in accordance with sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1). The notice demanded full payment of the entire amount of the Complete Withdrawal Liability by December 1, 2015, pursuant to section 4219(c)(5)(B) of ERISA, 29 U.S.C. § 1399(c)(5)(B), and Appendix E, §5(e)(2) of the Pension Fund's Pension Plan Document. The amount demanded was $8,617,423.67, the balance owed at that time on the Complete Withdrawal Liability.

47. Ramp Management did not timely initiate arbitration pursuant to section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1). Consequently, the amounts demanded by the Pension Fund are due and owing pursuant to section 4221(b)(1) of ERISA, 29 U.S.C. § 1401(b)(1).

48. Ramp Management failed to make the required Complete Withdrawal Liability payment to the Pension Fund.

WHEREFORE, Plaintiffs request the following relief:

(a) A judgment against Defendants, and on behalf of Plaintiffs, pursuant to sections 502(g)(2) and 4301(b) of ERISA, 29 U.S.C. §§ 1132(g)(2) and 1451(b), for --

    (i) $8,617,423.67 in withdrawal liability;

  (ii) interest computed and charged at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged;

  (iii) an amount equal to the greater of interest on the unpaid withdrawal liability or liquidated damages of 20% of the unpaid withdrawal liability; and

  (iv) attorney's fees and costs.

 (b) Post-judgment interest computed and charged on the entire judgment at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which interest is charged, compounded annually; and

 (c) For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

October 10th, 2016

/s/ *Emily M. Ironside*
Emily M. Ironside (ARDC #6315437)
Attorney for Plaintiffs
CENTRAL STATES FUNDS
Law Department
9377 W. Higgins Road, 10th Floor
Rosemont, Illinois 60018-4938
(847) 939-2489
eironside@centralstatesfunds.org